IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Dan Williams, <br><br> Plaintiff, <br><br> v. <br><br> Board of Education of City of Chicago, <br><br> Defendant. | Case No. 20 C 73 <br><br> Hon. LaShonda A. Hunt |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dan Williams sued Defendant Board of Education of City of Chicago, his now-former employer, alleging discrimination and retaliation based on his disability, First Amendment retaliation, intentional infliction of emotional distress, and violation of Illinois' whistleblower law. Currently before the Court is Defendant's Motion to Dismiss Plaintiff's Fourth Amended Complaint under Fed. R. Civ. P. 12(b)(6). For the reasons stated below, the motion to dismiss [66] is granted in part and denied in part.

## BACKGROUND

Defendant employed Plaintiff as a school social worker from 2008 until his termination in 2021. (4th Am. Compl. (FAC) ¶¶ 5-7, 76, Dkt. 61). During his employment, Plaintiff suffered from disabilities including a sinus condition, sleep apnea, anxiety, and depression; requested various accommodations for his disabilities; and filed several charges of discrimination against Defendant with the Illinois Department of Human Rights (IDHR) and the Equal Employment Opportunity Commission (EEOC). (*Id.* ¶¶ 8, 10-11). Plaintiff claims that Defendant discriminated against him throughout his employment and ultimately terminated him in retaliation for exercising his rights.

1

These disputes have led to years of administrative proceedings and state and federal court litigation.

I. **First Federal Case (*Williams I*)[1] and Appeal (*Williams II*)**

Plaintiff first sued Defendant for gender and disability discrimination in 2016, based on denial of requests for accommodation and non-selection for certain positions between 2014 and 2016. Complaint, *Williams v. Bd. of Educ. of City of Chi.*, No. 16 C 11467, Dkt. 1 (N.D. Ill. Dec. 19, 2016). The district court granted summary judgment for Defendant on all of Plaintiff's claims; the Seventh Circuit affirmed the decision and denied a petition for rehearing. *See Williams v. Bd. of Educ. of City of Chi.*, No. 16 C 11467, 2019 WL 4645447 (N.D. Ill. Sept. 24, 2019) ("*Williams I*"), *aff'd*, 982 F.3d 495 (7th Cir. 2020) ("*Williams II*"), *reh'g denied*, No. 19-3152, Dkt. 58 (7th Cir. Jan. 7, 2021).

II. **Second Federal Case (Current Case)[2]**

Plaintiff filed this case on January 3, 2019. After being granted leave to amend the complaint several times, the operative complaint now covers events beginning in August 2018 and continuing through Plaintiff's termination in July 2021. (FAC ¶ 13). Plaintiff's allegations generally relating to his employment and termination are summarized as follows.

A. **Employment**

1. Requests for Accommodation:

    o Defendant denied Plaintiff's August 2018 request for placement at a high school for the 2018-19 school year. (*Id.* ¶¶ 13, 78b, 78d, 91).

    o Defendant denied Plaintiff's August and September 2018 requests to work at school closer to his home. (*Id.* ¶¶ 14-15, 18-19, 78b, 78d, 92).

---

[1] *Williams I* was assigned to the calendar of District Judge Kendall.

[2] This case was reassigned to the calendar of Judge Hunt on June 2, 2023 [91][92].

2

- o Defendant delayed responding to and then effectively denied Plaintiff's December 2018 request to bring his dog to work to finish training as a service dog. (*Id.* ¶¶ 23, 31, 34, 43, 60, 78b, 91).

- o Defendant delayed responding to Plaintiff's January 2019 request for a HEPA filter in his office, although one was eventually provided. (*Id.* ¶¶ 30, 35, 43, 44, 56).

- o Defendant effectively denied Plaintiff's January 2019 request for a large screen monitor. (*Id.* ¶¶ 30, 35, 43, 44, 56).

2. <u>Non-Selection for Positions</u>:

- o Defendant did not select Plaintiff for the position of school social worker field instructor and mentor in August/September 2018. (*Id.* ¶¶ 16, 78a, 99-102).

- o Defendant did not select Plaintiff for the "Wednesday Assessment" or "Saturday Assessment" positions in October 2018, January 2019, February 2019, March 2019, May 2019, or June 2019. (*Id.* ¶¶ 21, 25, 36, 78a, 99-102).

3. <u>Other</u>:

- o Plaintiff reported that two students had tuberculosis in February 2019 and demanded Defendant disclose that information to teaching staff. (*Id.* ¶¶ 42, 78c, 114). In response, Defendant refused and "threatened" to discipline Plaintiff for a HIPAA violation if he said anything more. (*Id.* ¶ 115).

- o Plaintiff's supervisor hassled him for "mis-swipes" on September 5, 2018, even though he followed policies that day. (*Id.* ¶¶ 17, 78c).

- o Defendant unjustly placed Plaintiff on a remediation plan for the 2018-19 school year and gave Plaintiff poor scores on his remediation plan in February 2019. (*Id.* ¶¶ 20, 33, 39, 78b, 78f, 78g, 78j).

- o Plaintiff received an unjustified "Unsatisfactory" score on the "REACH" performance evaluation for 2017-18 school year, and Defendant denied Plaintiff's appeal of that evaluation in December 2018. (*Id.* ¶¶ 22, 24, 78e, 78h). Defendant required Plaintiff to pull students from classrooms at unscheduled time to complete his REACH performance evaluations. (*Id.* ¶ 78i).

- o Defendant delayed responding to Plaintiff's January 2019 request for help planning a field trip. (*Id.* ¶¶ 44, 78n).

B. **Termination**

1. <u>March 11, 2019 Incident</u>:

   - On March 11, 2019, Plaintiff "attempted to counsel several students who were bullying one of his students with a history of threatened suicide[.]" (*Id.* ¶ 46).

   - On March 12, 2019, Plaintiff's supervisor advised him to attend a conference call, after which Plaintiff emailed his director and supervisor about concerns at his school and was then escorted out of the building and placed on paid administrative leave "pending investigation" and denied access to a database, containing clinician schedules, student information, and special education records. (*Id.* ¶¶ 47-49, 64-65).

   - Plaintiff claims that Defendant did not inform him of the reason for his removal until March 21, 2019, when he received a letter stating that he was accused of "physical misconduct towards a student." (*Id.* ¶ 49).

2. <u>Investigation</u>:

   - The incident was investigated by a Chicago Public Schools (CPS) investigator and the Illinois Department of Child and Family Services (DCFS). (*Id.* ¶¶ 55, 57, 58).

   - On May 30, 2019, DCFS notified Plaintiff that "the outcome of [the] investigation was 'unfounded.'" (*Id.* ¶ 58).

   - The CPS investigation was completed on July 12, 2019, the results of which were later used as a basis for suspension without pay. (*Id.* ¶ 61).

3. <u>Plaintiff's Conduct During Suspension/Investigation</u>:

   - During the investigations, Plaintiff reported "suspicious and possibly illegal educational practices" at his school; filed a complaint against attorneys working for Defendant with the Illinois Attorney Registration and Disciplinary Commission (ARDC), which was closed one month after it was filed; communicated about his suspension with a reporter from a news outlet that aired a story about it on September 11, 2019. (*Id.* ¶¶ 63, 66, 67, 68, 70).

4. <u>Termination</u>:

   - On August 29, 2019, Defendant notified Plaintiff that his employment would be terminated. (*Id.* 68). On September 11, 2019, Defendant informed Plaintiff that he would be placed on unpaid administrative leave the following day. (*Id.* ¶¶ 55, 71-72). On November 1, 2019.

4

> > Defendant terminated Plaintiff's health insurance due to his failure to make co-payments. (*Id.* ¶ 73).
>
> > o A termination hearing was eventually held, and the hearing officer recommended Plaintiff's termination. (*Id.* ¶ 76). Defendant accepted the recommendation and terminated Plaintiff's employment in July 2021. (*Id.*)

According to Plaintiff, he was treated differently than similarly situated employees with respect to many of the events listed above. (*Id.* ¶¶ 17, 50, 65, 72, 78c, 78l, 78q, 78s, 78u, 78v). He filed three charges of discrimination with the EEOC dated June 5, 2019, March 24, 2020, and July 30, 2020, complaining about events starting on August 9, 2018. (*Id.* ¶ 12; Ex. A). The EEOC issued right to sue letters for all of the charges.

### III. <u>Administrative Termination Proceedings and Appeal (*Williams III*)</u>

In connection with Plaintiff's termination, extensive administrative proceedings were held, including a due process hearing and a termination hearing. (FAC ¶ 76). After a hearing officer recommended termination, Defendant accepted the recommendation and terminated Plaintiff's employment. (*Id.*) The Illinois Court of Appeals affirmed the termination decision, and the Illinois Supreme Court denied Plaintiff's petition for leave to appeal. *See Williams v. Bd. of Educ. of City of Chi.*, 2022 IL App (1st) 211167-U ("*Williams III*"), *app. denied*, 221 N.E.3d 327 (Ill. 2023).

In so ruling, the appellate court summarized the incident that led to plaintiff's termination as follows. On March 11, 2029, a student had reported that he was thinking about suicide because of being bullied by a group of girls, so Plaintiff decided to stage a "mini group intervention" to address the alleged bullies. *Id.* ¶ 4. When one of the girls refused to leave her classroom, Plaintiff grabbed her wrist and pulled her into the hallway. *Id.* ¶ 5. Another employee arrived and told Plaintiff to release his grip, but he refused. *Id.* ¶ 6. The principal and assistant principal then arrived, Plaintiff and the girl were separated, and there was a lot of commotion, yelling, and loud

5

talking. *Id.* ¶ 7. Plaintiff was overheard saying he was "sick of this this shit[,]" telling one of the girls "if [the student] commits suicide, it's going to be on you[,]" and stating to the others something like, "if this kid does something to himself, I'm coming after all of you." *Id.* The appellate court held that the factual findings supporting Defendant's decision to terminate were not against the manifest weight of the evidence. *Id.* ¶ 38-51. In addition, the court held that Defendant had "established a non-discriminatory and non-retaliatory basis for its decision to terminate [Plaintiff's employment." *Id.* ¶ 58. As such, "[Plaintiff did] not make a showing of pretext for his discrimination or retaliation claim." *Id.*

## LEGAL STANDARDS

Rule 12(b)(6) permits a party to move for dismissal based on a pleading's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In determining whether a complaint states a claim under Rule 12(b)(6), courts must accept all non-conclusory factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In addition, the Court must construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor. *Levy v. W. Coast Life Ins. Co.*, 44 F.4th 621, 626 (7th Cir. 2022). While ruling on a motion to dismiss for failure to state a claim, a court may generally consider only the plaintiff's complaint, exhibits to the complaint, matters central to the plaintiff's claim and incorporated into the complaint by reference, and items subject to judicial notice. *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Applying these principles, a complaint will survive a motion to dismiss if it "states a plausible claim for relief." *Ashcroft*, 556 U.S. at 679 (2009) (citing *Twombly*, 550 U.S. at 556). To state a plausible claim for relief, a

6

complaint must "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679. The movant has the ultimate burden to show that dismissal is warranted. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

## DISCUSSION

Plaintiff asserts five counts against Defendant in the FAC—disability retaliation, First Amendment retaliation, disability discrimination, intentional infliction of emotional distress (IIED), and violation of the Illinois Whistleblower Act (IWA). Defendant has moved to dismiss on several grounds: issue preclusion; claim splitting; failure to exhaust administrative remedies; failure to plead an adverse employment action; insufficient allegations to support a failure to accommodate or hostile work environment claim; inadequate allegations to proceed with a *Monell* claim; immunity; preemption; and failure to generally satisfy minimal pleading standards. The Court will address each issue in turn.

**I.    Preclusion**

Three doctrines of preclusion are relevant to this decision: issue preclusion; claim preclusion; and claim splitting, which is a related but distinct subset of claim preclusion. Under the doctrine of issue preclusion, relitigation of an issue resolved in an earlier suit is barred if: (1) the issues are the same; (2) the issue was actually litigated; (3) determination of the issue was essential to the final judgment; and (4) the party against whom issue preclusion is invoked was fully represented. *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014). Under the doctrine of claim preclusion, relitigation of a claim resolved in an earlier suit is barred if: (1) there was a final judgment on the merits by a court of competent jurisdiction; (2) the causes of action are the same; and (3) the parties are the same. *Walczak v. Chicago Bd. of Educ.*, 739 F.3d 1013, 1016 (7th Cir. 2014). Under the doctrine of claim splitting, which draws on the law of claim

preclusion, litigation of a claim duplicative of a claim resolved in an earlier suit is barred if: (1) the causes of action are the same; and (2) the parties are the same. *Scholz v. United States*, 18 F.4th 941, 952 (7th Cir. 2021). For both claim preclusion and claim splitting, the requirement that the causes of action be the same is satisfied if the claims arise out of the same set of operative facts or the same transaction, regardless of whether different theories of relief are asserted. *Walczak*, 739 F.3d at 1017; *Scholz*, 18 F.4th at 952.

Defendant first argues that Plaintiff's claims are barred by issue prelusion because many of the issues present in this case were addressed by the district court in *Williams I* and the Seventh Circuit in *Williams II*. Specifically, Defendant points to the determinations about Plaintiff's non-selection for certain positions, poor performance evaluations, and placement on a professional development plan, among other things. But because *Williams I* and *II* related to events that occurred during a different time period than the instant case and the decisions of the lower court and reviewing court were decided on summary judgment, the Court rejects Defendant's position.

In *Williams I*, Defendant prevailed on summary judgment on all of Plaintiff's claims. Notably, those causes of action arose from conduct in 2014 and 2015, and the district court refused to expand the case beyond that timeframe. *See, e.g., Williams I*, 2019 WL 4645447, at *12 (declining to address Plaintiff's request for a service animal and complaints regarding his supervisor because they were not included in or reasonably related to the relevant EEOC charges). As to the issues the court did address, many of the determinations depended largely on the specific evidence in the record because the matter was before the court on summary judgment. The Seventh Circuit's *Williams II* decision affirming the district court focused primarily on whether Plaintiff had submitted sufficient evidence for a jury to rule in his favor. *Williams II*, 982 F.3d at 503-04. Again, the reviewing court's inquiry considered only evidence in the record of events that took

place in 2014 and 2015. Both decisions are fact-intensive and depend largely on details about events from that timeframe.

Although many of the issues addressed in *Williams I* and *II* are similar to those present in this case, they are not the same because they involve underlying facts that occurred later. As such, those decisions are preclusive only to the extent that they include determinations as a matter of law that are applicable to the factual allegations before this Court. In reviewing *Williams I* and *II*, the Court identified only two such potential holdings. First, the district court determined that not being selected for a social work field instructor position would not constitute an adverse employment action because it came only with a loftier title, not a raise. *Williams I*, 2019 WL 4645447, at *7. Second, the district court noted that claims stemming from poor performance evaluations or placement on performance improvement plans fail because such actions are unaccompanied by tangible job consequences and therefore do not constitute adverse employment actions. *Id.* at *9. On appeal, the Seventh Circuit acknowledged these holdings and then turned to other issues that were dispositive. *Williams II*, 982 F.3d at 502.

Even construing all inferences in Plaintiff's favor as required when engaging in a Rule 12(b)(6) analysis, the Court reads the FAC as rehashing these same claims of adverse actions that were ruled upon in *Williams I* and *Williams II*. Only the dates of the alleged occurrences have changed. Thus, to the extent that Plaintiff's claims stem from not being selected for a social work field instructor position, poor performance evaluations, or placement on performance improvement plans, those issues have been decided and may not be used to support Plaintiff's claims in this case.

Next, Defendant contends that Plaintiff's claims are the same as those resolved in the administrative termination proceedings and the Illinois Appellate Court's decision in *Williams III*,

9

so they are barred under the doctrine of claim splitting. Plaintiff objects based on due process concerns arising from the different procedures and standards that apply in the administrative proceedings and because he would not have been permitted to bring his claims as affirmative causes of action against Defendant in those proceedings.

With regard to the second point, Plaintiff concedes that the Seventh Circuit has held that a teacher's federal discrimination claims were barred under the doctrine of claim splitting because she could and should have brought them in her state court action challenging her termination. *Walczak*, 739 F.3d at 1019. However, there is a key difference between *Walczak* and the present dispute. In *Walczak*, the statute in place at the time required the teacher to bring any action challenging the administrative termination decision in the state trial court, which is a court of general jurisdiction competent to adjudicate such claims. *Id* at 1015 (citing *Blount v. Stroud*, 232 Ill. 2d 302 (2009)). Here, the governing statute required Plaintiff to appeal the termination decision directly to the Illinois Appellate Court, which is a court of limited jurisdiction. 105 ILCS 5/34-85(a)(8). Because Defendant has not provided any authority to show that Plaintiff could have brought the causes of action being prosecuted in this case in the termination proceedings or state appellate court, the Court is not convinced that Plaintiff should be precluded from bringing his claims here.[3]

In sum, the only issues precluded from relitigation in this suit are that Plaintiff's non-selection for the school social worker field instructor position, poor performance evaluations, and placement on performance improvement plans do not constitute adverse employment actions.

---

[3] Although *Williams III* may have some preclusive effect on this matter under the doctrine of *issue preclusion* with respect to the factual findings about the March 11, 2019 incident and the determination that Defendant established a non-discriminatory and non-retaliatory basis for Plaintiff's termination, the Court need not address that question at this stage in the case because it was not raised by the parties.

Otherwise, the issues determined in *Williams I* and *II* were specific to facts that took place in 2014 and 2015, and therefore are not the same as those at issue in this case. Finally, *Williams III* has no preclusive effect under the doctrine of claim splitting because Plaintiff does not appear to have been able to bring the claims asserted in this action in that proceeding.

## II.     Failure to Exhaust

With respect to Plaintiff's termination, Defendant argues that Plaintiff never raised it in an EEOC charge; thus, any claim arising from the termination should be dismissed for failure to exhaust administrative remedies. This issue, however, has already been decided by previously assigned District Judge Valderrama. In a Minute Order dated March 18, 2022, the court noted that "Plaintiff requested leave to amend his complaint to add allegations about his termination, *in lieu of filing an additional charge before the [EEOC]*, as claims relating to his termination are 'like or reasonably related' to the claims at issue in the operative complaint[,]" and granted Plaintiff leave to file the fourth amended complaint for that reason, among others. (Dkt. 60) (emphasis added). In other words, because the district court deemed claims arising from Plaintiff's termination as "like or reasonably related" to the claims at issue in the prior iteration of the complaint, Plaintiff was allowed to bring them in this complaint without raising them in a new EEOC charge. *See Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). As such, the termination claims are properly before the Court.

## III.    Disability Retaliation and Discrimination (Counts I and III)

To state claims for disability retaliation and discrimination, Plaintiff must allege, among other things, that he suffered from an adverse employment action. *See Hoppe v. Lewis Univ.*, 692 F.3d 833, 839 (7th Cir. 2012); *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 786 (7th Cir. 2007). Generally, an adverse employment action is "a materially adverse change in the terms and

11

conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities." *Stockett v. Muncie Indiana Transit Sys.*, 221 F.3d 997, 1001 (7th Cir. 2000) (quoting *Crady v. Liberty Nat'l Bank and Tr. Co.*, 993 F.2d 132, 136 (7th Cir.1993)) (alteration in original). "Unfair reprimands or negative performance reviews, unaccompanied by tangible job consequences, do not suffice[.]" *Boss v. Castro*, 816 F.3d 910, 919 (7th Cir. 2016).

Defendant argues that Plaintiff's disability retaliation and discrimination claims fail because he has not pled adverse employment actions. While Defendant concedes that Plaintiff's placement on unpaid leave and termination constitute adverse acts, Defendant insists that "the remainder of Plaintiff's cornucopia of grievances do not rise to the level of an adverse act." (Def. Mot. at 5, Dkt. 66). Indeed, "Title VII . . . does not protect against petty slights, minor annoyances, and bad manners." *Boss*, 816 F.3d at 918-19.

As already discussed, Plaintiff's non-selection for the field instructor position, poor performance reviews, and placement on performance improvement plans do not constitute adverse employment actions. Furthermore, the Court agrees with Defendant that many of the grievances lodged by Plaintiff similarly do not rise to the level of an adverse action. Specifically, Plaintiff's allegations regarding the missing computer monitor, being hassled for "mis-swipes," and receiving a delayed response to his request for assistance planning a field trip are insufficient. Not only does Plaintiff fail to allege how any of those instances altered the terms and conditions of his employment, but he also does not explain how they were related to the essential functions of his job. *See Brumfield v. City of Chi.*, 735 F.3d 619, 633 (7th Cir. 2013). On the other hand, the remaining allegations, including those about placement at a school closer to home, the service dog, and the Wednesday and Saturday assessment positions, are sufficient to survive dismissal because Plaintiff plausibly alleges that they would allow him to be able to perform the essential functions

12

of the job or have tangible consequences such as extra pay. At this juncture, Plaintiff has alleged enough to support these claims to survive dismissal.

### A. **Failure to Accommodate**

For a disability discrimination claim based on failure to accommodate, a plaintiff must ultimately show: (1) qualification as an individual with a disability; (2) employer's awareness of the disability; and (3) employer's failure to reasonably accommodate the disability. *Guzman v. Brown Cnty.*, 884 F.3d 633, 642 (7th Cir. 2018). Upon receiving an accommodation request, an employer is obligated to "engage with the employee in an interactive process to determine the appropriate accommodation under the circumstances[,]" but not "to provide the exact accommodation requested[.]" *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1178 (7th Cir. 2013), *overruled on other grounds, Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016).

Contained within Plaintiff's ADA discrimination claim (Count III), he alleges that he requested several reasonable accommodations but Defendant either failed to engage in the interactive process or took undue time to provide accommodations. Plaintiff's failure to accommodate claim is specifically based on his requests to bring his dog to work to complete training as a service dog, for placement at a school closer to home, and for placement at a high school. (Resp. at 9). Defendant contends that Plaintiff has failed sufficiently plead a discrimination claim based on failure to accommodate under Rule 8 because the allegations supporting the claim are not set forth in a separate count. In addition, Defendant disputes whether the accommodations sought by Plaintiff were reasonable.

First, the Court rejects Defendant's Rule 8 argument, as the failure to accommodate allegations are clearly contained within the ADA discrimination count and intended as a theory upon which that claim is based. This is sufficient to satisfy Rule 8's "short and plain statement"

13

requirement. Second, based on the allegations of the FAC, the Court cannot say that Plaintiff's requests relating to his dog and placement at certain schools in certain locations were unreasonable as a matter of law, that Defendant satisfied its obligation to engage in the interactive process, or that such accommodations or reasonable alternatives were not available. For these reasons, to the extent that Plaintiff's ADA discrimination claim is based on failure to accommodate, it may proceed.

### B. Hostile Work Environment

For a discrimination claim based on a hostile work environment, a plaintiff must ultimately show: "(1) the employee was subject to unwelcome harassment; (2) the harassment was based on a reason forbidden by Title VII . . . ; (3) the harassment was so severe or pervasive that it altered the conditions of employment and created a hostile or abusive working environment; and (4) there is a basis for employer liability. *Smith v. Ill. Dep't of Transp.*, 936 F.3d 554, 560 (7th Cir. 2019) (citing *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 834 (7th Cir. 2015)). "To rise to the level of a hostile work environment, conduct must be sufficiently severe or persuasive [sic] to alter the conditions of employment such that it creates an *abusive* relationship." *Huri*, 804 F.3d at 834 (emphasis in original) (citing *Alexander v. Casino Queen, Inc.,* 739 F.3d 972, 982 (7th Cir. 2014)).

Contained within the ADA retaliation claim (Count I), Plaintiff lists several alleged hostile working conditions and asserts they created a hostile working environment that was so pervasive that it altered the terms of employment. (FAC ¶¶ 78-79). Like the failure to accommodate claim, Defendant argues that the hostile work environment claim fails to satisfy Rule 8 because it is not separately pled. In addition, Defendant contends that the allegations of harassment fall far short of a hostile work environment.

14

The Court finds Defendant's Rule 8 argument more persuasive with respect to this claim because Plaintiff does not attempt to connect the purported existence of a hostile work environment and the alleged retaliation (i.e., his suspension without pay and termination), so it is unclear why the hostile work environment allegations are contained within the ADA retaliation claim. Nonetheless, the Court need not decide that issue because the claim fails for another reason. It is telling that most of the conduct Plaintiff complains of was taken in response to his requests or actions, which is generally not harassment. Only being "hassled for mis-swipes" seems to fall into the category of harassment. Even assuming some of the other matters Plaintiff complains of constitute harassment, the allegations do not paint the picture of harassment so severe or pervasive that it altered the conditions of employment and created a hostile or abusive working environment. Therefore, Plaintiff's ADA retaliation claim is dismissed to the extent that it is based on a hostile work environment.

## IV. First Amendment Retaliation (Count II)

Because Plaintiff's First Amendment retaliation claim is brought under section 1983 against a public entity, Defendant argues that the FAC does not meet the requirements of *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978). To state a *Monell* claim, a plaintiff must allege a constitutional violation through an express policy, a wide-spread practice, or by a person with final decision policymaking authority. *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). If a plaintiff's claim is based on the action of a policymaker, as is the case here, then "[i]t is necessary for the policymaker's act to have been in conformance with, or in the creation of, governmental rules that have the effect of law (and then the rule must violate the plaintiff's constitutional rights)." *McGreal v. Ostrov*, No. 98 C 3958, 2002 WL 1784461, at *3 (N.D. Ill. Aug. 1, 2002) (citing *Auriemma v. Rice*, 957 F.2d 397, 400 (7th Cir. 1992); *Gernetzke v. Kenosha Sch. Dist. No. 1*, 274

15

F.3d 464, 469-70 (7th Cir. 2001). Otherwise, "the third prong of *Monell* would lead to vicarious liability against a municipality simply because a policymaker engaged in malfeasance." *McGreal*, 2002 WL 1784461, at *3.

Defendant argues that Plaintiff's First Amendment retaliation claim fails because he has not alleged that Defendant's termination decision was made in conformance with a policy or rule that has the effect of law. Plaintiff responds only that it "has plausibly alleged *Monell* liability as he was ultimately terminated by the Board of Education, the ultimate policy-making authority." (Resp. at 12). A reasonable reading of Plaintiff's First Amendment retaliation claim is that Defendant allegedly terminated him out of retaliatory and personal animus, not that the termination decision was in conformance with some policy. Without that, Plaintiff cannot state a *Monell*-based claim for First Amendment retaliation. As a result, the Court need not reach the questions of whether Plaintiff plausibly alleged any constitutionally protected speech or retaliatory conduct. Accordingly, Count II for First Amendment retaliation is dismissed.

## V.  IIED (Count IV)

To state a claim for IIED under Illinois law, a plaintiff must allege: (1) truly extreme and outrageous conduct; (2) intent to inflict severe emotional distress or knowledge there is a high probability the conduct will cause severe emotional distress; and (3) causation in fact. *See Cairel v. Alderden*, 821 F.3d 823, 835 (7th Cir. 2016). As with any other claim, "[t]hreadbare recitals of [these elements], supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Plaintiff's IIED claim, (FAC ¶¶ 108-111), merely realleges the background facts and recites the elements of an IIED. There was no attempt to tie any of the background allegations to the elements of the claim, including how the conduct rises to the level of extreme and outrageous or whether Defendant had the requisite mental state. Plaintiff's

16

arguments on this point are conclusory and therefore unpersuasive. (Resp. at 13-15). Because the claim does not meet minimal pleading standards, the Court declines to address Defendant's argument that the claim is preempted by the Illinois Human Rights Act and Illinois Workers Compensation Act. As such, Count IV for IIED is dismissed.

## VI.    IWA Retaliation (Count V)

The IWA provision invoked by Plaintiff prohibits an employer from retaliating against an employee for "disclosing or attempting to disclose public corruption or wrongdoing." 740 ILCS 174/20.1. To constitute retaliation, an employer's act or omission must be "materially adverse to a reasonable employee[.]" *Id.* The IWA does not define the terms "public corruption" or "wrongdoing," so it is appropriate to refer to a legal dictionary for their common meaning. *Beasley v. City of Granite City*, 442 F. Supp. 3d 1066, 1072 (S.D. Ill. 2020) (citing *Thomas v. Ill. Dept. of Healthcare & Fam. Servs.*, 2016 IL App (1st) 143933, ¶ 16). "Public corruption," also referred to as "official misconduct," is defined as, "A public officer's corrupt violation of assigned duties by malfeasance, misfeasance, or nonfeasance." Official Misconduct, Black's Law Dictionary (11th ed. 2019).  "Corruption" is defined as, "The act of doing something with an intent to give some advantage inconsistent with official duty and the rights of others." Corruption, Black's Law Dictionary (11th ed. 2019).

Plaintiff's IWA claim is premised on having reported "public corruption or wrongdoing" by complaining about poor special education services at his school, reporting that two students had latent tuberculosis, filing an ARDC complaint, and contacting the media. Aside from Plaintiff's ARDC complaint, which Plaintiff alleges was filed to "to expose that . . . the CPS ADA Appeals Board [was] running a sham department with absolutely no standard of review[,]" (FAC ¶ 118), none of the allegations meet the definition of public corruption or wrongdoing. Plaintiff neither

alleges nor explains how providing poor services, while not ideal, is more than his subjective opinion and rises to the level of corruption or wrongdoing. Furthermore, Plaintiff does not allege how Defendant's decision not to disclose information about students' noninfectious medical conditions constitutes corruption or wrongdoing. Finally, Plaintiff has not offered any basis for claiming that the information he shared with the media about his suspension related to anything other than his personal employment situation, especially not corruption or wrongdoing. The ARDC complaint, however, is sufficient to fall within the category of "disclosing or attempting to disclose public corruption or wrongdoing" because Plaintiff alleges that it was based on Defendant's ADA appeals board not adhering to applicable legal standards.

Finally, as to whether Plaintiff sufficiently alleged retaliation for purposes of this claim, the allegation that Defendant converted his suspension to be without pay and continued to pursue termination in retaliation for filing that complaint is at least sufficient to survive dismissal, as discussed above. Having determined that Plaintiff's IWA claim is sufficiently plead to the extent that it is based on the ARDC complaint allegations, the Court must address two other issued raised by Defendants with regard to this claim.

First, Defendant argues that Plaintiff's request for punitive damages on this Count should be stricken because such relief is not available for an IWA claim. The authority cited by Defendant plainly supports its position. *See Wheeler v. Piazza*, 364 F. Supp. 3d 870, 886 (N.D. Ill. March 5, 2019); *Averett v. Chicago Patrolmen's Fed. Credit Union*, 2007 WL 952034, at *3–4 (N.D. Ill. 2007). The Court takes Plaintiff's failure to respond to this point as an indication that Plaintiff concedes this point. Accordingly, Plaintiff's request for punitive damages in Count IV is stricken.

Second, Defendant maintains that it is immune from liability under the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"). In

18

pertinent part, the Tort Immunity Act states, "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201. Tort Immunity Act protection extends to municipalities for officials' discretionary policy decisions. *Murray v. Chi. Youth Ctr.*, 224 Ill. 2d 213 (2007); 745 ILCS 10/2-109. "Section 2-201 immunizes an individual defendant only to the extent that the action he is being sued for involves *both the making of a policy choice and the exercise of discretion.*" *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 679 (7th Cir. 2009) (emphasis added) (citing *Van Meter v. Darien Park Dist.,* 207 Ill. 2d 359 (2003)). Because "immunities afforded to governmental entities operate as an affirmative defense, those entities bear the burden of properly raising and proving their immunity under the Act." *Van Meter*, 207 Ill. 2d at 370.

As discussed above, Plaintiff's IWA claim alleges that Defendant retaliated against him by suspending him without pay and benefits and eventually terminating his employment. Although those decisions may have involved some exercise of discretion, Defendant fails to explain how decisions directed specifically towards Plaintiff constitute the making of policy choices, nor do the allegations support such an inference. Accordingly, the Court declines to dismiss the IWA claim based on immunity.

## **CONCLUSION**

For the reasons stated above, Defendant's motion to dismiss [66] is granted in part and denied in part as follows: (1) Plaintiff is precluded from relitigating the prior binding determination that non-selection for the school social worker field instructor position, poor performance evaluations, and placement on performance improvement plans do not constitute adverse

employment actions for purposes of his ADA retaliation (Count I) and ADA discrimination (Count III) claims; (2) to the extent the ADA retaliation claim (Count I) is based on a hostile work environment, it is dismissed; (3) Plaintiff's First Amendment retaliation claim (Count II) and IIED claim (Count IV) are dismissed; and (4) to the extent the IWA claim (Count V) is based on the ARDC complaint filing, it survives, but in all other respects, the claim is dismissed and the request for punitive damages is stricken.

**DATED**: April 29, 2024

**ENTERED**:

LASHONDA A. HUNT
United States District Judge